Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Suzanne B. Conlon | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 97 C 8311 | **DATE** | 12/8/2000 |
| **CASE TITLE** | KYRA KYLES, et al. vs. JK GUARDIAN SECURITY SERVICES | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Plaintiffs' motion for a new trial [144-4] is denied. ENTER MEMORANDUM OPINION AND ORDER.

*/s/ Suzanne B. Conlon/*

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | Document Number |
|---|---|---|---|---|
| | No notices required, advised in open court. | | | |
| | No notices required. | | number of notices | |
| ✓ | Notices mailed by judge's staff. | | DEC 1 1 2000 | 159 |
| | Notified counsel by telephone. | | date docketed | |
| | Docketing to mail notices. | | *initials* | |
| | Mail AO 450 form. | E0-7 | docketing deputy initials | |
| | Copy to judge/magistrate judge. | FILED FOR DOCKETING | 12/8/2000 | |
| SB | courtroom deputy's initials | 00 DEC -8 PM 6: 49 | date mailed notice | |
| | | | jad7 | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| KYRA KYLES and LOLITA PIERCE, | ) | |
| | ) | |
| Plaintiffs, | ) | No. 97 C 8311 |
| | ) | |
| v. | ) | Suzanne B. Conlon, Judge |
| | ) | |
| JK GUARDIAN SECURITY SERVICES, INC. | ) | |
| (d/b/a GUARDIAN SECURITY SERVICES), | ) | |
| | ) | **DOCKETED** |
| Defendant. | ) | DEC 1 1 2000 |

## MEMORANDUM OPINION AND ORDER

Following the jury's verdict for defendant J.K. Guardian Security Systems, Inc. ("Guardian") in this Title VII racial discrimination case, plaintiffs Kyra Kyles and Lolita Pierce ("plaintiffs") move for a new trial pursuant to Fed.R.Civ.P. 59. Plaintiffs identify purported evidentiary and jury instruction errors to support their conclusion that the jury's verdict was against the manifest weight of the evidence.

**I. Exclusion of Thomas Accardo's Testimony**

**Background**

With the joint final pretrial order, Guardian submitted motions *in limine* to bar evidence of its treatment of other employees and "all stray remarks," as well as "evidence regarding stray remarks." Guardian's motions and plaintiffs' responses were generalized and did not include deposition or documentary excerpts. Accordingly, the court's rulings were generalized; the motion to bar stray remarks was granted as to non-decisionmakers, but was denied as to purported racial epithets made

159

by one of Guardian's decisionmakers, Michael Malinowski. Similarly, the court denied Guardian's duplicative motion to bar Malinowski's purported statements regarding African-Americans because "this evidence is highly probative of racial *animus* and is not *unfairly* prejudicial." Minute Order of 9/11/2000 (Dkt entry 134)[emphasis in original].

During trial, Guardian filed a renewed motion to bar plaintiffs from calling three witnesses (Thomas Accardo, Nick Genardo and John Proffitt) to testify about Malinowski's alleged use of racial slurs or epithets on grounds that plaintiffs did not provide the witnesses' home addresses and telephone numbers in either their answers to interrogatories or in their witness lists, as requested in Guardian's interrogatories and required by the Northern District of Illinois' standing order with respect to identification of witnesses in the pretrial order. Further, Guardian complained that plaintiffs' description of these witnesses' knowledge was insufficient and misleading because plaintiffs merely stated that these three witnesses (and ten other current and former Guardian employees) possessed information concerning Guardian's treatment of its African-American employees, but plaintiffs did not refer to any racial slurs or epithets or to any specific incidents.

In response to an inquiry by the court near the conclusion of plaintiffs' case, plaintiffs stated their intention to call one of the three witnesses, Thomas Accardo.[1] As a result, the court held a hearing outside the presence of the jury so that plaintiffs could make a testimonial offer of proof. Plaintiffs' Motion for New Trial, Ex. 1, pp. 3-16. The court then heard arguments on Guardian's renewed motion *in limine*. The motion was granted based on grounds of unfair surprise, as well as the marginal probative value of Accardo's testimony when weighed against unfair prejudice. The court's finding of unfair prejudice was based on plaintiffs' lack of sufficient notice to Guardian and

---

[1] The parties have not submitted a copy of the transcript of this colloquy with the court.

2

Guardian's resulting inability to investigate and defend against Accardo's previously undisclosed testimony. *Id.*, pp. 22-26.

**Relevancy, Probative Value and Prejudice**

According to Accardo's proffer, he worked as a security guard and then as a supervisor for Guardian from August 1, 1994 until July 31, 1995. Soon after he started, Malinowski instructed him and others in his presence that Guardian's African-American security guards assigned to federal buildings in downtown Chicago were to be replaced by "sharp, white males." *Id.*, p. 6. As a result, black security officers were replaced by white officers for several days; Malinowski's order was withdrawn due to protests by the affected building managers. *Id.* Accardo further testified that on several unspecified occasions during his one year employment at Guardian, he heard Malinowski refer to African-American security guards as "five dollar an hour niggers." *Id.*, p. 8. Plaintiffs contend that Accardo's testimony was highly probative of Guardian's discriminatory intent, motive and the pretextual nature of Guardian's claimed color-blind hiring practices.

Guardian responds that Accardo's testimony consists of highly irrelevant stray remarks that are not linked to plaintiffs, to Guardian's hiring processes or to the receptionist position in issue. Guardian ignores the fact that Malinowski was one of two decisionmakers selecting receptionists. As expressed by the court in its original *in limine* ruling, Malinowski's purported statements regarding African-Americans are probative of Guardian's racial *animus*. Thus, Accardo's testimony is evidence of discriminatory intent. In addition, Accardo rebuts testimony by Guardian witnesses that its personnel practices with respect to all job positions were color-blind.

Guardian further contends that the epithets and the racial discrimination incident Accardo described are remote in time because Accardo was only able to identify the approximate date of one

3

incident in early August 1994, when he began his employment at Guardian. But Accardo testified Malinowski made several similar statements during the following year of his employment. The alleged discrimination against plaintiffs occurred during the summer of 1995. Based upon the record, the court cannot conclude that Malinowski's purported remarks were either stray or remote in time. Accardo's testimony related to racist comments and an incident of racial discrimination by Guardian's key personnel decisionmaker over a period of time that partially overlapped with plaintiffs' job applications.

Guardian points out that Accardo's proffered testimony was highly inflammatory. The statements and personnel action attributed to Malinowski certainly are compelling evidence of a racist attitude and employment policy. Compelling evidence of racism is not prejudicial to Guardian in a legal sense. Contrary to Guardian's present argument [Def.Resp. at 4], the court did not find the *nature* of Accardo's proffered testimony to be unfairly prejudicial. Indeed, Guardian placed its lack of bias and discriminatory policies in issue; Accardo's testimony was directly responsive.

**Failure to disclose and unfair surprise**

The decision to exclude Accardo's testimony was based explicitly on plaintiffs' litigation conduct. In their supplemental responses to interrogatories served on June 17, 1998, plaintiffs identified 13 current and former Guardian employees, including Accardo, as persons with "information concerning [Guardian's] treatment of its African-American employees." Def. Renewed Mot. *in limine*, Ex. 2. Plaintiffs listed Accardo's subsequent employment address, but not his current or last known home address, as requested in the interrogatories. *Id.*, Ex.1 ¶ J; *see also* Fed.R.Civ.P. 26(a)(3). Guardian apparently made no attempt to locate Accardo at his place of employment, to serve a deposition subpoena on Accardo, or to compel more specific information about Accardo's "information" through requests to plaintiffs' counsel or its own discovery efforts. However, the

vagueness of plaintiffs' initial interrogatory response, standing alone, is insufficient to support exclusion of Accardo's testimony. But the totality of circumstances counsel a different result.

Apparently Accardo's name did not surface again until plaintiffs submitted their witness list to Guardian during preparation of the joint final pretrial order. Accardo was listed as a "may call" witness, without any address as required by Local Rule 16.1.1, Standing Order on Pretrial Procedures in Civil Cases for the Northern District of Illinois. Nor did plaintiffs supplement their interrogatory responses with respect to Accardo to reveal Malinowski's purported racial slurs and discriminatory order concerning the assignment of African-American security guards. Plaintiffs were obligated to do so. *See* Fed.R.Civ.P. 26 (e)(1) and (e)(2). It is undisputed that plaintiffs refused to respond to Guardian's inquiries just prior to and during trial as to the subject matter of Accardo's testimony. Def. Renewed Mot. *in limine*, at ¶ 8; Pl. Mot. for New Trial, Ex. B at 23-24; Def. Resp. to Mot. for New Trial at 7. Most telling, plaintiffs' detailed statement of contested facts and law and their trial brief --- submitted as part of the joint final pretrial order --- make absolutely no reference to either Malinowski's purported racial slurs or to the discriminatory order relating to assignment of African-American security guards. Joint Final Pretrial Order, Tabs B2, I.1.a. It was not until Accardo actually testified during plaintiffs' offer of proof that Guardian was put on notice of this significant and potentially damaging evidence.

The court finds that plaintiffs did not make a good faith effort to update their discovery disclosures or to at least orally advise Guardian of the subject of Accardo's testimony when requested to do so. Guardian was thus denied a reasonable opportunity to investigate the incident and Malinowski's purported statements, and prepare a defense against this evidence.[2] The conduct of

---

[2] After receiving plaintiffs' witness list on the eve of trial, Guardian's attorneys reviewed their files. The only reference they found to Accardo (obtained through an FOIA request) did not relate to Accardo's proffered testimony. Def. Resp. to Mot. for New Trial, Ex. D.

5

plaintiffs' counsel just prior to and during trial strongly suggests an intent to surprise Guardian and enjoy a resulting tactical advantage. That is *unfair* prejudice. The disclosure requirements of the Federal Rules of Civil Procedure and the local rules were designed to prevent trial by ambush. Moreover, plaintiffs failure to show substantial justification for not updating its vague interrogatory responses concerning Accardo's "information" about "treatment of African-Americans" is a sufficient basis for exclusion of Accardo's testimony. Fed.R.Civ.P. 37(c)(1). This is especially true, given Guardian's repeated inquiries on the subject just before and during trial. In addition, unfair prejudice to Guardian's ability to defend the case because of plaintiffs' tactics in concealing the true nature of Accardo's testimony substantially outweighs the probative value of permitting Accardo to testify. Fed.R.Evid. 403.

## II. Exclusion of exhibits

Plaintiffs contend that exclusion of some of their trial exhibits entitles them to a new trial. The parties have not furnished the court with a copy of the trial transcript. Thus, the court does not have the benefit of reviewing the context of evidentiary rulings made several months ago, and to an extent can only hypothecate the reasons for the challenged rulings at this stage. Most of the exhibits reflect hearsay; were prepared for a possible legal challenge to Guardian's employment practices, and therefore were of questionable reliability; and/or were not properly authenticated under the business records exception to the hearsay rule, Fed.R.Evid. 803(6). PX 3, 6, 11, 20, and 21. In addition, some of the hearsay exhibits were cumulative of witnesses' testimony about undisputed facts. PX 6, 11, 20 and 21.

In addition, plaintiffs proffered two EEOC right-to-sue letters, PX 16 and 17, despite the court's pretrial granting of Guardian's motion *in limine* regarding the admissibility of an EEOC right-

to-sue letter. Minute Order dated 9/11/00 (Dkt. entry 134). The court found that the EEOC's provisional conclusions about the merits of this case "lack any probative value and [present a] substantial danger of unfair prejudice, jury confusion and waste of time on collateral issues." *Id.*; *see also* Fed.R.Evid. 403.

The court notes that plaintiffs repeatedly predicate their relevancy and probative value arguments on the theory that the exhibits in dispute rebut Guardian's position that the Legal Assistance Foundation's employment discrimination testing project was "invalid," "unfair," and "fraudulent." *See, e.g.,* Pl. Motion for New Trial at 7, 9, 10. This characterization of the record is both inaccurate and disingenuous. The court granted plaintiffs' motion *in limine* to bar Guardian from arguing or suggesting to the jury that employment testing constitutes fraud; the order reiterated the Seventh Circuit's ruling that the testing in this case was protected activity under Title VII. Minute Order of 9/11/2000 (dkt. entry 134). Accordingly, Guardian did not proffer any evidence or argue to the jury that plaintiffs' testing activity was illegal, fraudulent or invalid, nor did Guardian even cross-examine plaintiffs' witness Lee Ann Loder, who constructed and supervised this testing project. Plaintiffs' personal biases were of course a proper subject of cross-examination and comment.

In sum, plaintiffs fail to demonstrate that the exclusion of the seven exhibits cited was erroneous and prejudiced their right to a fair trial.

### III. Jury Instructions

As with reviewing trial decisions about the admissibility of disputed exhibits, post-trial consideration of jury instruction rulings is problematic because the parties do not furnish the court with a transcript of the jury instructions conference or the instructions actually given to the jury.

Plaintiffs argue they were entitled to special "tester" instructions that would explain to the jury plaintiffs "unique status" as "private attorneys general" with the important role of "wiping out discrimination in the workplace." Plaintiffs' proposed instructions 7, 8 and 9. Plaintiffs' status as testers and their right to challenge Guardian's employment practices were not disputed issues before the jury. Rather, the jury was instructed that plaintiffs were entitled to a verdict in their favor if the jury found that Guardian discriminated against them in the hiring process. The strong closing arguments of both sides were premised on this clear and uncomplicated legal principle. Plaintiffs do not cite any statement in Guardian's closing argument that might reasonably suggest plaintiffs should not prevail because they were testers who did not intend to accept jobs with Guardian. To now suggest that the jury was somehow "confused" or "misled" is speculative second-guessing of the jury's verdict. Moreover, plaintiffs' proposed instructions on this subject were not neutral statements of the law that would have assisted the jury in resolving the factual issues before them. A jury could construe "instructions" in partisan language as a message by the court on the merits of plaintiffs' claims. This is a problem inherent in submitting *dicta* from cases as jury instructions.

Finally, plaintiffs assert that it was error for the court to give Guardian's business judgment instruction. Plaintiffs do not argue that the instruction given was a misstatement of the law, but rather that Guardian was not entitled to such an instruction because it failed to articulate legitimate, non-discriminatory business reasons for not offering plaintiffs the receptionist position. This is basically a reiteration of plaintiffs' renewed motion for judgment as a matter of law, which the court finds unpersuasive. The record contains sufficient evidence to support a reasonable jury inference that Guardian's reasons for not offering positions to plaintiffs were legitimate and non-discriminatory.

## **CONCLUSION**

Plaintiffs have not carried their burden of showing that the jury's adverse verdict was against the manifest weight of the evidence or that erroneous evidentiary and jury instruction rulings prejudiced plaintiffs' substantial rights. Accordingly, the motion for a new trial is denied.

ENTER:

*Suzanne B. Conlon*
Suzanne B. Conlon
United States District Judge

December 8, 2000